1 | **THE TRIAL LAW FIRM, LLC**
Mart Harris, Esquire
2 | Pa. Id. No. 319504
412.588.0030 | MH@TLawF.com
3 |
The Pittsburgher
4 | 428 Forbes Avenue, Suite 1700
Pittsburgh Pennsylvania 15219
5 |

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

**PITTSBURGH DIVISION**

| | |
|---|---|
| **NEOSHE JENKINS** | Case No.  2:21-cv-1174 |
| Plaintiff, | |
| vs. | **COMPLAINT IN CIVIL ACTION** |
| **COMMUNITY HUMAN SERVICES CORPORATION,** | Fed.R.Civ.P. 38(b)(1) Notice of Demand for Trial by Jury |
| Defendant. | |

# COMPLAINT

NOW COMES the Plaintiff, Neoshe Jenkins ("Jenkins") by and through her lawyers, The Trial Law Firm, to file the within Complaint in Civil Action, and in support thereof avers that:

**Parties, Jurisdiction, and Venue**

1. The Plaintiff is Neoshe Jenkins ("Jenkins"). Jenkins is a Black adult individual who resides in Allegheny County Pennsylvania.

2. The Defendant is Community Human Services Corporation ("CHSC"). CHSC is a Pennsylvania corporation which has an address of 2525 Liberty Avenue, Pittsburgh Pennsylvania 15222.

3. Jenkins brings this lawsuit to redress violations of 42 U.S.C. § 1981. Thereby this court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C. § 1367(a).

4. The events and omissions which give rise to the claims asserted in this lawsuit occurred in the geographical territory of this court, in or around Pittsburgh Pennsylvania. Therefore, pursuant to 28 U.S.C. § 1391(b), this district court is the proper venue for this lawsuit.

5. CHSC resides and does business in Allegheny County Pennsylvania. Therefore, this court has personal jurisdiction over CHSC pursuant to Fed.R.Civ.P. 4.

6. Jenkins has satisfied all necessary conditions precedent to the filing of this lawsuit.

**Common Facts of the Lawsuit**

7. Jenkins began working at Community CHSC in or around March 2016.

8. Numerous employees referred to Black people as "cotton pickers."

9. Numerous other employees quit due to discrimination.

10. Eventually, a group formed called the "Anti-Oppression Committee" due to the pervasive discrimination at Defendant.

11. When management learned of this committee, they eventually sent Jeremy Carter to spy on these meetings and report back who attended and what was said.

12. Shortly after, the minority employees on the Anti-Oppression Committee quit or were terminated, though the white employees on the Committee were moved to different roles in the company.

13. Due to a staffing shortage, many positions were open.

14. Jenkins applied for the Chief Housing Solutions Officer in or around the summer of 2019, and interviewed for the position in September 2019.

15. In the interview Jenkins was offered the job of Program Director, and she accepted the position, which she started in October 2019.

16. Jenkins learned that she was being treated less favorably than similarly situated white employees, and reported to her supervisor, Human resources and, in or around December 2019:

   a. White Program directors, such as Cassandra Darcey were not required to come into the office during "on call" emergencies, whereas, Jenkins was required to do so.

   b. Jenkins was reprimanded for not being at work, when she was, in fact, at work.

   c. Jenkins was reprimanded for the paperwork mistakes committed by a previous Program Director, during such time that Jenkins was not yet a Program Director.

   d. Jenkins was reprimanded for fixing the paperwork mistakes committed by a previous Program Director, during such time that Jenkins was not yet a Program Director.

   e. Seth Abrams admitted that his false criticisms of Jenkins were without reason, other than "going off what Jeremy [Carter] told me."

17. On or about January 19, 2020, Jenkins was falsely reprimanded for a medication error, which had occurred back in August of 2019 when she was not even the Program Director.

18. On or about February 10, 2020, shortly after filing a Complaint of Discrimination with the PHRC, CHSC terminated Jenkins' employment.

## COUNTS I-II

### 42 U.S.C. § 1981- Race Discrimination in Contracts

### 43 P.S. § 955- Race Discrimination in Employment

19. All other paragraphs of this lawsuit are incorporated.

20. Jenkins is a member of a protected class on the basis of race.

21. Jenkins was subjected to adverse employment actions as described in ¶¶ 16-18.

22. Discriminatory animus for those adverse employment actions can be inferred from the facts described in ¶¶ 8-9, 11-12, 16-18.

23. As a direct and proximate result of Defendant's actions, Jenkins was injured and therefore entitled to all available damages under the law.

## COUNTS III-IV

### 42 U.S.C. § 1981- Race Retaliation

### 43 P.S. § 955- Race Retaliation

24. All other paragraphs of this lawsuit are incorporated.

25. Jenkins engaged in protected activity under the law as demonstrated in ¶ 16.

26. Jenkins was subjected to materially adverse actions immediately following this protected activity as demonstrated in ¶¶ 17-18.

27. Retaliatory causation can be inferred from the temporal proximity between the protected activity and the materially adverse action, as well as due to the temporal proximity

between the commission of the medication error, and the punishment for it, and that the medication error was committed by another employee, not Jenkins, and that Jenkins had no responsibility at the time of the error for that work.

28. As a direct and proximate result of Defendant's actions, Jenkins was injured and therefore entitled to all available damages under the law.

WHEREFORE, Plaintiff Neosha Jenkins respectfully requests Judgment in her favor and against that of the Defendant.

Respectfully submitted on August 2, 2021

                                      **THE TRIAL LAW FIRM, LLC**

**By:** _____
            Mart Harris, Esquire
            Pa. Id. No. 319504
            412.588.0030 | MH@TLawF.com
            428 Forbes Avenue, Suite 1700
            Pittsburgh Pennsylvania 15219

            *Trial Lawyer for Neoshe Jenkins*